UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| EDDIE L. PITTMAN<br><br>    Plaintiff,<br><br>v.<br><br>SCHOLASTIC INC.,<br><br>    Defendant. | Case No. 21-cv-04045-NKL |

## ORDER

  Pro se Plaintiff Eddie Pittman argues Scholastic Inc. violated Title VII of the Civil Rights Act of 1964 and Section 1981 of the Civil Rights Act of 1866 by discriminating against him, creating a hostile work environment, and constructively discharging him because he is Black. Scholastic asks the Court to dismiss this case under Federal Rule of Civil Procedure 12(c) because Mr. Pittman has failed to state a claim upon which relief can be granted. *See* Doc. 24 (Second Mot. for Judgment on the Pleadings) (the "Motion"). Because Mr. Pittman fails to sufficiently allege that he suffered an adverse employment action, his race discrimination claim fails. Since Mr. Pittman also fails to allege severe or pervasive harassment, his hostile work environment and constructive discharge claims fail. Accordingly, the Court GRANTS Scholastic's Motion, and this case is hereby DISMISSED.

### I. STANDARD

  While a motion to dismiss a complaint for failing to "state a claim upon which relief can be granted" made under Federal Rules of Civil Procedure 12(b)(6) must be brought before an answer is filed, a defendant may raise the defense later under Rule 12(c). *See* Fed. R. Civ. P.

12(b)(6); Fed. R. Civ. P 12(h)(2)(B); *see also Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A Rule 12(b)(6) motion and a Rule 12(c) motion usually address different concerns—the former targets the sufficiency of the allegations in a complaint, while the latter moves to the merits of a plaintiff's claims—and each therefore generally implicates a different standard of proof. *See* 5C Wright & Miller, § 1369 (explaining that, while "[t]he granting of a Rule 12(b) motion typically merely means that the plaintiff has failed to satisfy one of the procedural prerequisites for asserting his claim for relief[,] [a] motion for judgment on the pleadings . . . theoretically is directed towards a determination of the substantive merits of the controversy"); 61A Am. Jur. 2d Pleading § 559 (same); *see also Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018) (explaining the difference between motions brought pursuant to Rules 12(b)(6) and 12(c)). However, when a defendant raises a failure to state a claim upon which relief can be granted defense under Rule 12(c), the Court treats the 12(c) motion as if it were brought pursuant to Rule 12(b)(6). *Westcott*, 901 F.2d at 1488 (analyzing a 12(c) motion to dismiss for failure to state a claim under the 12(b)(6) standard); *St. Paul Ramsey Cty. Med. Ctr. v. Pennington Cty., S.D.*, 857 F.2d 1185, 1187 (8th Cir. 1988) (treating a motion to dismiss for failure to state a claim under Rule 12(b)(6) filed after pleadings had closed as a motion under Rule 12(c), while applying the Rule 12(b)(6) standards).

      A Rule 12(b)(6) motion should be granted only if the plaintiff fails to plead facts sufficient to state a claim "that is plausible on its face" and would entitle the plaintiff to the relief requested. *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party . . . but [is] not bound to accept as true [t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements or legal conclusions couched as factual allegations." *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (internal citations and quotation marks omitted). Where the pleading party is proceeding *pro se,* the Court must construe the pleadings "liberally." *Miles v. Ertl Co.*, 722 F.2d 434, 434 (8th Cir. 1983) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)).

When a defendant moves from the sufficiency of the plaintiff's allegations to the merits of the plaintiff's claim, the defendant must show "there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006).

## II.    BACKGROUND

Around August 2019, Mr. Pittman, a Black man, started work as a temporary evening employee at Scholastic in Jefferson City, Missouri. During his first few months, Mr. Pittman had no issues with his supervisors. That said, he had several negative interactions with coworkers Guy and Steven.[1] Roughly a month after starting work, in September 2019, Mr. Pittman asked Paul, his supervisor at the time, to log him onto a scanner, because temporary employees were not provided with their own access. Paul then directed Guy to log onto the device for Mr. Pittman, using Guy's credentials. Guy responded, "I don't know; I don't trust this guy." Doc. 22 (Amended Compl.), at 4. Mr. Pittman does not allege that he was unable to access the scanner.

Four months later, on January 2, 2020, "Steve[2] and Guy" approached Mr. Pittman as he was working one evening to break down pallets of book materials, and Steve "rudely [said]

---

[1] Mr. Pittman's Complaint does not provide last names for any Scholastic employee.

[2] Mr. Pittman refers to "Steve" and "Steven" throughout the Complaint. Because each reference also relates to Guy, and because Mr. Pittman alleges that both individuals were permanent employees, not supervisors, the Court assumes that Steve and Steven are the same individual.

3

something to [the] effect [of]: 'It don't take much sense to set these pallets up properly[.]'" Doc. 22, at 4. Mr. Pittman interpreted this comment to be "getting at [his] way of doing things." *Id*. Mr. Pittman alleges that Guy made similar comments, and asked him to "move his situation [sic] over towards them after [he] deliberately positioned himself [away] from them because they basically were rude and not respectful." *Id*. According to Mr. Pittman, the request served no work-related purpose. After the move, Guy asked Mr. Pittman about his Super Bowl predictions, and when Mr. Pittman chose the Ravens, Guy said, "we need to send you down there with the others." *Id*. Later that day, Guy came to Mr. Pittman's workstation and moved the pallet Mr. Pittman was working on seven feet away from his previous workstation, saying nothing in the process. *Id.* at 5. Mr. Pittman alleges that Guy's action had no work-related purpose.

In late November or early December, Linda became Mr. Pittman's supervisor. Soon after, Mr. Pittman "recognized little subtle signs of preferential bias from Linda." *Id.* at 3. On January 29, 2020, Mr. Pittman alleges that Linda discriminated against him; he claims that Linda asked him to move to stand in front of her as she presented during a "pre-2nd shift meeting." *Id.* Prior to the request, Mr. Pittman was standing behind Linda. Shortly after the request, Linda moved to another area. During other meetings, Mr. Pittman alleges that Linda presented with employees standing behind her. Those employees were allegedly white. Mr. Pittman alleges he had stood in the same place for pre-shift meetings since August 2019.

Not long after, on February 6 and February 13, 2020, Mr. Pittman alleges Linda discriminated against him again. He alleges that Linda did not give him an award or recognize him for his extra efforts, such as for staying late, cleaning up, and being very productive. Mr. Pittman alleges that it was known that he was performing "beyond the call of duty efforts" at work. Doc. 22, at 3. While Linda knew that Mr. Pittman had done extra work, she never recognized him

4

Case 2:21-cv-04045-NKL   Document 35   Filed 12/20/21   Page 4 of 14

at a meeting. To Mr. Pittman's knowledge, everyone Linda recognized was white.

In early March 2020, Mr. Pittman took emergency medical leave for family reasons. Prior to taking leave, Mr. Pittman never told Scholastic about any of the behavior identified in the Complaint. On March 23, 2020, he emailed a complaint—containing most of the facts he now pleads—to Scholastic. Mr. Pittman concluded the email by stating that he is no longer comfortable returning to the Jefferson City Scholastic location, and requested a transfer to another state. Scholastic responded to this complaint to request additional details. After Mr. Pittman provided these additional details, he never heard back from Scholastic regarding his complaints. However, Mr. Pittman did receive an invitation to return to work in September 2020. Mr. Pittman refused the offer, believing that Scholastic had not taken his complaints seriously. However, he did not inquire about the status of his complaints, tell Scholastic that he believed his complaints had gone unresolved, or that his treatment at Scholastic was the reason he refused to return.

Mr. Pittman first filed his Complaint, along with a Motion for Leave to Proceed in Forma Pauperis, on March 5, 2021. Doc. 1 (Mot. for Leave to Proceed in Forma Pauperis). The Court granted the Motion, and Mr. Pittman formally filed his Complaint on May 5, 2021. Doc. 2 (Order Granting Application); Doc. 3 (Compl.). Scholastic answered and filed a Motion for Judgment on the Pleadings. Doc. 15 (Answer); Doc. 16 (Mot. Judgment on the Pleadings). Mr. Pittman sought leave to amend his complaint, which was granted, and filed his Amended Complaint on September 5, 2021. Doc. 18 (Mot. For Leave to Amend); Doc. 21 (Order Granting Leave to Amend); Doc. 22 (Amended Compl.). As a result of Mr. Pittman's Amended Complaint, the Court denied Scholastic's first Motion for Judgment on the Pleadings as moot. Doc. 27. Scholastic filed an Amended Answer and a second Motion for Judgment on the Pleadings. Doc. 23 (Amended Answer); Doc. 24 (Second Mot. For Judgment on the Pleadings). The Motion is now ripe.

### III. DISCUSSION

Construed liberally, Mr. Pittman argues that Scholastic racially discriminated against him, created a hostile work environment, and constructively discharged him, all in violation of Title VII and Section 1981. Claims brought under Title VII and Section 1981 are generally analyzed under the same framework. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 n. 1 (8th Cir. 2010); *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010). The Court will address each claim in turn.[3]

#### A. Whether Mr. Pittman Stated a Race Discrimination Claim Under Title VII and Section 1981

A prima facie case of discrimination requires Mr. Pittman to prove that: "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, [that] similarly situated employees outside the protected class were treated differently)." *Id.* (citing *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009)). While "it is not necessary to plead facts sufficient to establish a prima facie case" the elements of a prima facie case "may be used as a prism to shed light upon the plausibility of the claim." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016). To state a claim upon which relief can be granted, then, the complaint must still "include sufficient factual allegations to provide the grounds on which the claim rests. A

---

[3] Scholastic correctly notes that Mr. Pittman's pleadings fail to comply with Rule 10(b). But both Scholastic and the Court had no trouble identifying Mr. Pittman's claims and the facts that he alleges to substantiate them. "A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). Accordingly, the Court overlooks the technical errors in the form of Mr. Pittman's Complaint and moves to the substance of the allegations themselves.

district court . . . need not conjure up unpled allegations to save a complaint." *Id.* (citing *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc)).

Scholastic argues that Mr. Pittman has failed to plead that he suffered an adverse employment action because he does not allege that he was discharged, disciplined, demoted, or denied any material terms, conditions, or benefits of employment. Mr. Pittman counters that, because his supervisors did not recognize his extra efforts at work, he suffered an adverse employment action.[4]

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jones v. City of St. Louis*, 825 F.3d 476, 480 (8th Cir. 2016) (quoting *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804–05 (8th Cir. 2013)). That said, "not everything that makes an employee unhappy is an actionable adverse action[.]" *Duffy v. McPhillips*, 276 F.3d 988, 991–92 (8th Cir. 2002) (quoting *Bechtel v. City of Belton*, 250 F.3d 1157, 1162 (8th Cir.2001)). "[M]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action. *Wilkie v. Dep't of Health and Human Servs.*, 638 F.3d 944, 955 (8th Cir. 2011) (quoting *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007)). "Mere inconvenience without any decrease in title, salary, or benefits is insufficient to show an adverse employment action." *Cruzan v. Special Sch. Dist. # 1*, 294 F.3d 981, 984 (8th

---

[4] Mr. Pittman's Complaint could be construed as alleging constructive discharge not only as a standalone claim, but as a theory of an adverse employment action. Regardless, as discussed in more detail in Section III(C), the Complaint fails to adequately allege constructive discharge.

Cir. 2002) (internal citation omitted). "Lesser actions than demotion, suspension, and termination can be adverse employment actions if their cumulative effect causes an employee to suffer 'serious employment consequences' that adversely affect or undermine h[er] position." *Shockency v. Ramsey Cnty.*, 493 F.3d 941, 948 (8th Cir. 2007) (quoting *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997)).

Mr. Pittman fails to identify any action taken by Scholastic that produced a tangible change in his working conditions. While Mr. Pittman points to actions by Steven and Guy to allege discrimination, he does not allege that either was a supervisor. A tangible employment action, by definition, requires action by a supervisor acting on behalf of the company. *Pa. State Police v. Suders*, 542 U.S. 129, 144–45 (2004).

Mr. Pittman also alleges that Linda, one of his supervisors, passed Mr. Pittman over for workplace awards and failed to recognize his "extra efforts" on the job; and that this is "kind of on the same level as bypassing eligible employees for promotions, etc." Doc. 32, at 2. While potentially frustrating, this is simply not enough to establish an adverse employment action in a discrimination case. *See Douglas v. Donovan*, 559 F.3d 549, 553 (D.C. Cir. 2009) (finding allegation that plaintiff was passed over for the Presidential Rank Award was not an adverse employment action because it did not significantly change any employment responsibilities or opportunities); *Ellis v. Donoahoe*, No. 13–cv–238, 2014 WL 7335161, at *5 (E.D. Mo. Dec. 19, 2014) (finding that an employee not receiving a watch as a retirement gift was not an adverse employment action, as it was not a "significant disadvantage comparable to 'termination, cuts in pay or benefits, [or] changes that affect an employee's future career prospects.'") (quoting *Jackman*, 728 F.3d at 804. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Duffy*, 276 F.3d at 991–92 (quotation omitted). Here, Mr. Pittman has not pled

any facts from which to infer that those who received the awards received any benefit at work, formal or informal, or that not receiving the award had any effect on Mr. Pittman's duties or access to opportunities to grow or advance on the job. As such, there is nothing to plausibly suggest that the "cumulative effect" of the lack of recognition from his supervisor caused him to suffer "serious employment consequences that adversely affect[ed] or undermine[d]" his position. *Shockency v. Ramsey Cnty.*, 493 F.3d 941, 948 (8th Cir. 2007) (quoting *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997)).

Mr. Pittman also argues that Linda took an adverse employment action against him in a "pre-2nd shift meeting" when she asked Mr. Pittman to move to stand in front of her, rather than behind her, as he had been doing for months. *See* Doc. 22, at 3. This is not an adverse employment action. Mr. Pittman does not allege that Linda punished, or even reprimanded, him in any way after this request, and there is nothing from which the Court could infer that the cited instance had any impact on Mr. Pittman's employment. Asking an employee to move is not on par with termination, pay-cuts, losing benefits, or being passed over for promotion. *Ellis*, 2014 WL 7335161, at *5; *see also Devin v. Schwan's Home Serv. Inc.*, 491 F.3d 778, 786 (8th Cir. 2007) (holding a written notice regarding workplace duties issued to an employee without any negative consequences could not be an adverse employment action) *abrogated on other grounds by Torgerson v. City of Rochester,* 643 F.3d 1031 (8th Cir. 2011); *Sims v. Health Midwest Physician Services Corp.*, 196 F.3d 915, 921 (8th Cir. 1999) (finding a written warning after a verbal reprimand is not enough for an adverse employment action); *Gagnon v. Sprint Corp.*, 284 F.3d 839, 850 (8th Cir. 2002) ("It is well-settled [in] this circuit that ostracism and rudeness by supervisors and co-workers do not rise to the level of an adverse employment action.") (internal

citations omitted), *abrogated on other grounds*.[5]

### B. Whether Mr. Pittman Pled a Hostile Work Environment Claim

Mr. Pittman also alleges that he suffered a hostile work environment. "Hostile work environment harassment occurs when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Singletary v. Mo. Dep't of Corrs.*, 423 F.3d 886, 892 (8th Cir. 2005) (quoting *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir.2003)). To succeed on his hostile work environment claim, Mr. Pittman must prove that: "(1) he . . . belongs to a protected group; (2) he . . . was the subject of unwelcome harassment; (3) a causal nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper action." *Tademe*, 328 F.3d at 991 (citation omitted). "The fourth element involves both objective and subjective components." *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 801 (8th Cir. 2009) (citation omitted). It requires that "[t]he harassment . . . be 'severe or pervasive enough to create an objectively hostile or abusive work environment' and the victim must subjectively believe her working conditions have been altered." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

To determine whether a work environment would be objectively offensive to a reasonable person, courts "examine all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work

---

[5] Because Mr. Pittman fails to allege an adverse employment action, the Court need not address Scholastic's arguments concerning whether Mr. Pittman plausibly alleged facts to support an inference of racial motivation for any adverse employment action.

performance." *Tademe*, 328 F.3d at 892–93 (citation omitted). At bottom, the law is clear that "simple teasing . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998). To properly be considered severe and pervasive, the challenged conduct must be extreme. *Id.*

Mr. Pittman argues that the actions of Linda, Guy, and Steven were "severe enough to interfere with [his] perspective and attitude" regarding his work at Scholastic. Doc. 32, at 2. Scholastic responds that, even if Mr. Pittman alleges he subjectively experienced severe or pervasive treatment at work, he fails to allege, or argue, that the actions were objectively severe or pervasive. Scholastic is correct. As a matter of law, Mr. Pittman's claim fails because, even accepting his allegations as true and drawing all inferences in his favor, he has not pled facts to show that the actions of Linda, Steven, and Guy were objectively so severe and pervasive as to alter a term or condition of employment. To the contrary, Mr. Pittman's allegations amount to unactionable "discourtesy and rudeness" or "normal tribulations of the workplace[,]" not racial harassment. *Mems v. City of St. Paul*, 327 F.3d 771, 782 (8th Cir. 2003). Indeed, Mr. Pittman himself characterizes the actions of his coworker as simply "rude and not respectful" and "[v]ery, very rude." Doc. 22, at 4, 5. None of the conduct identified by Mr. Pittman, either individually or cumulatively, including the remarks by Guy and Steve regarding Mr. Pittman's Super Bowl selections and his "way of doing things" at work, the lack of recognition from supervisors for Mr. Pittman's extra efforts at work, and Linda's request that Mr. Pittman move from behind her as she presented during a meeting, rises to the level of severity or pervasiveness required to state a claim for a hostile work environment in the Eighth Circuit. *See e.g.*, *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759–60 (8th Cir. 2004) (holding that sporadic racial slurs, occurring roughly

once per month over two years, were not so severe or pervasive to alter the terms or conditions of employment); *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1085 (8th Cir. 2010) (finding the display of racially motivated pictures, comments about fried chicken, references to "the ghetto," and other derogatory racial remarks occurring over 12 months were not severe or pervasive) *abrogated on other grounds by Torgerson*, 643 F.3d at 1031. As such, Mr. Pittman fails to state a hostile-work-environment claim. *Blomker*, 831 F.3d at 1057 ("[W]e find, as a matter of law, that the facts alleged in Blomker's complaint fail to show harassment so severe or pervasive that they satisfy the high threshold for a sexual harassment claim based on hostile work environment.").[6]

### C. Whether Mr. Pittman Plausibly Pled a Constructive Discharge Claim

Mr. Pittman also alleges a stand-alone constructive discharge claim. Constructive discharge occurs "when an employer deliberately makes an employee's work environment so intolerable that resignation is the employee's only plausible alternative." *Cosby v. Steak N Shake*, 804 F.3d 1242, 1246 (8th Cir. 2015). To prove a constructive discharge claim, an employee must show that: "1) a reasonable person in the employee's situation would find the working conditions intolerable, and 2) the employer intended to force the employee to quit, or the employer could reasonably foresee that its actions would cause the employee to quit." *Watson v. Heartland Health Labs., Inc.*, 790 F.3d 856, 863 (8th Cir. 2015) (internal quotation marks omitted). If an employee quits without giving the employer a reasonable chance to resolve his claim, there has been no constructive discharge. *Id.* Constructive discharge also requires "considerably more proof than an unpleasant and unprofessional environment." *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 936 (8th Cir. 2002) (internal quotations marks omitted).

---

[6] Scholastic also argues that Mr. Pittman has failed to plausibly allege a discriminatory motive for any harassing behavior. Because the Court finds that Mr. Pittman has alleged no severe or pervasive conduct, it need not address Scholastic's arguments related to discriminatory motive.

Mr. Pittman's constructive discharge claim fails for at least three reasons. First, because Mr. Pittman has not alleged severe or pervasive conduct that could support a hostile work environment claim, he has necessarily failed to establish the first element of his constructive discharge claim. *Rester v. Stephens Media*, LLC, 739 F.3d 1127, 1132 (8th Cir. 2014) (citing *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 811 (8th Cir. 2008) and *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004) ("A hostile-environment constructive discharge claim entails something more [than an actionable hostile work environment].")).

Second, even if he had, Mr. Pittman fails to allege that Scholastic intended to force, or could reasonably foresee that its actions would cause, Mr. Pittman to quit. Indeed, to the contrary, Mr. Pittman alleges that he took an "emergency leave of absence for family reasons[,]" and that Scholastic invited him to return to work. *See* Doc. 22, at 5, 9. Mr. Pittman did not tell Scholastic why he did not return from leave, even when a representative explicitly asked him to come back to work. Doc. 22, at 5.

Third, there is no allegation that Mr. Pittman gave scholastic any realistic opportunity to resolve his complaints before he resigned or refused to return to work. Mr. Pittman did not complain to Scholastic about the challenged behavior prior to taking leave: his first complaint was sent by email on March 25, 2020, at least several weeks after he stopped working. Mr. Pittman also alleges that he declined Scholastic's offer to return to work because he felt that his complaints were "basically left unresolved" because Scholastic never formally followed up with him after discussing his complaints in late March 2020. However, Mr. Pittman "did not reveal his reasons for not accepting the offer to return when conversing with [the] HR rep who tried to get him to return" in September of 2020. Doc. 22, at 5. Nor did he inquire whether Scholastic had taken any action in response to his complaints regarding Linda, Guy, and Steve. As a matter of law, this is

insufficient. *See Tork v. St. Luke's Hosp.*, 181 F.3d 918, 920 (8th Cir. 1999) ("We think that quitting her job after a few incidents of allegedly unfair criticism and one incident of denied recourse, if indeed she was denied recourse, was jumping to conclusions too quickly."). Given that Mr. Pittman chose not to determine whether Scholastic had acted on his complaints, and further chose not to inform Scholastic of his reasoning for refusing to return to work, Mr. Pittman cannot now claim that he gave Scholastic a reasonable chance to resolve his complaints. Accordingly, Mr. Pittman's constructive discharge claim fails.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion, Doc. 24, is GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: December 20, 2021
Jefferson City, Missouri